IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TANYA BOYD HARPER                                              PLAINTIFF

VS.                              CASE NO. 03-CV-1170

BROOKSHIRE GROCERY COMPANY                                     DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendant Brookshire Grocery Company. (Doc. No. 8). The Plaintiff Tanya Harper has responded. (Doc. No. 18). The Defendant has filed a reply to Plaintiff's response. (Doc. No. 21). The matter is ripe for consideration.

## BACKGROUND

The Plaintiff Tanya Harper started working for the Defendant Brookshire Grocery Company at its Magnolia, Arkansas, store in 1987. After six months in the bakery department, Plaintiff began working in the meat department. In January 1991, Plaintiff injured her back at work. She underwent back surgery for the injury and was off work three to four months. Her surgeon, Dr. Ted Saer, rated her disability at 10% for which she received Workers' Compensation benefits from the Defendant. Plaintiff returned to work in September 1991. In January 1993, Plaintiff again injured her back at work. She underwent a second surgery. After the surgery, she received an addition disability impairment rating of 5%. Plaintiff received Workers' Compensation benefits from the Defendant for this injury. She again returned to work at Defendant's Magnolia store.

In February 1999, Plaintiff injured her back at work for a third time. In October 1999, Plaintiff underwent surgery for her back. After the surgery, Dr. Saer referred her to a pain management physician, Dr. Yeshwant Reddy. Dr. Reddy began treating the Plaintiff in February 2000.

During this time, Plaintiff filed a Workers' Compensation claim. In the course of defending this claim, Defendant hired an investigator, who videotaped the Plaintiff while engaged in various physical activities between February 28, 2000, and August 20, 2000. After viewing the tape, Eddie Crawford, Defendant's risk manager, mailed a copy of the videotape to Dr. Reddy. Dr. Reddy was asked to view the tape and provide Defendant with a report stating whether or not he felt that Plaintiff was capable of returning to work on either a regular or restricted bases. He was also asked to state in his report whether, after viewing the tape, he felt that the Plaintiff was trying to mislead him in her statements about being disabled.

On September 25, 2000, Dr. Reddy viewed the videotape and wrote a report on his observations. In the report, he stated that his overall impression from the tape was that the Plaintiff could walk, bend and lift weight without any problems. Plaintiff's endurance appeared to be good and she showed no signs of back pain or problems. He stated that she behaved as a normal person and that it was quite clear that she could do more that what she reported to him.

On September 26, 2000, Dr. Reddy met with the Plaintiff for her scheduled follow up visit. During this visit, Dr. Reddy discussed with Plaintiff and her husband his findings after having viewed the videotape. Dr. Reddy later involved Kimberly Jamison, Defendant's nurse case manager assigned to Plaintiff's case, in the discussion. At the end of the visit, Dr. Reddy released Plaintiff from his care and assigned her a 10% permanent impairment rating. He

forwarded to the Defendant a copy of his report on the videotape and his follow up visit notes.

Upon receiving Dr. Reddy's report, Defendant stopped making temporary disability payments to the Plaintiff. It contacted the Arkansas Department of Insurance and discussed her case with the department's fraud unit.

Thereafter, on November 10, 2000, Defendant wrote Plaintiff a letter terminating her employment effective November 9, 2000. In the letter, Defendant indicated that the reason for her termination was their discovery that she had been dishonest with the company and her treating physicians about her recovery and disability. The letter stated that the Defendant had reviewed her case with the Fraud Unit of the Arkansas Department of Insurance and that they felt that a fraud has been committed for which she could be prosecuted. Defendant informed her that no future disability payments would be made to her and that if she decided to pursue her workers' compensation claim her file would be turned over to the Department of Insurance for prosecution.

On November 16, 2000, Plaintiff began receiving treatment for her back from Dr. Anthony Russell, a neurosurgeon. On December 29, 2000, and April 23, 2002, Dr. Russell performed additional surgeries on the Plaintiff. As a result of Plaintiff's 1999 injury, Dr. Russell rated her impairment at 16% to the body as a whole. On September 6, 2002, Plaintiff was approved for social security disability benefits.

Plaintiff continued to pursue her workers' compensation claim, despite Defendant's threat. On October 23, 2002, Plaintiff was awarded temporary total disability from February 10, 1999 through October 23, 2002 (the date she was released by Dr. Russell); permanent partial disability benefits based upon the 16% impairment rating given by Dr. Russell; and a wage-loss

disability in the amount of 60% in excess of the 16% impairment rating.

The Defendant appealed the ALJ's decision to the full Arkansas Workers' Compensation Commission. The Commission found that the treatment provided by Dr. Russell was unreasonable and unnecessary. It found that Plaintiff was entitled to an award of temporary total disability from February 10, 1999, through September 25, 2000 (the date Plaintiff was released by Dr. Reddy); permanent partial disability benefits based upon the 10% anatomical rating given by Dr. Reddy; and a wage-loss disability in the amount of 30%. The Plaintiff has appealed this decision to the Arkansas Court of Appeals and is awaiting a decision.

On November 10, 2003, Plaintiff filed this lawsuit advancing claims against the Defendant for wrongful discharge, defamation and the tort of outrage. Defendant has filed a Motion for Summary Judgment on all three causes of action. Plaintiff has responded contending that there are factual issues which negate Defendant's entitlement to judgment as a matter of law.

## **STANDARD OF REVIEW**

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provides that when a party moves for summary judgment:

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

### I. Plaintiff's Wrongful Discharge Claim

Plaintiff's wrongful discharge claim is founded upon allegations that the Defendant breached a implied covenant of good faith and fair dealing owed to her by virtue of her employment with Defendant. She also alleges that her termination, based upon Defendant's allegations of dishonesty and fraud, violated Arkansas public policy. In its Motion for Summary Judgment, the Defendant argues that Arkansas does not recognize a wrongful discharge claim

based upon an implied covenant and that the Plaintiff cannot establish any of the exceptions to Arkansas's employment at will doctrine. Plaintiff has responded by arguing that Plaintiff's termination was in violation of Arkansas public policy, which is an exception to the employment at will doctrine.[1]

*Wrongful discharge claim based upon an implied covenant of good faith and fair dealing*

Arkansas is a employment at will state and its courts do not recognize as actionable a claim for breach of an implied covenant of good faith and fair dealing. *Coatney v. Enterprise Rent-A-Car Co.,* 897 F.Supp.1205, 1212 (8th Cir. 1995)(*citing Gladden v. Arkansas Children's Hosp.,* 292 Ark. 130, 136, 728 S.W.2d 501, 505 (1987)). Therefore, Plaintiff may not maintain her wrongful discharge claim based upon a breach of an implied covenant.

*Wrongful discharge claim based upon a violation of Arkansas public policy*

Arkansas has long adhered to the employment at will doctrine which provides that a contract of employment for an indefinite term may be terminated at the will of either party. *Smith v. American Greetings Corp.,* 304 Ark. 596, 597, 804 S.W.2d 683 (1991)(*citing Griffin v. Erickson,* 277 Ark. 433, 642 S.W.2d 308 (1982)). It does recognize at least four exceptions to the at will doctrine. These are: 1) cases in which the employee is discharged for refusing to violate a criminal statute; 2) cases in which the employee is discharged for exercising a statutory right; 3) cases in which the employee is discharged for complying with a statutory duty; and 4) cases in which employees are discharged in violation of the public policy of the state. *Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp. 487 (W.D.Ark. 1982). Therefore, if Plaintiff can show that her discharge falls within one of the above exceptions to the at will doctrine, then she

---

[1] Plaintiff does not address Defendant's implied covenant argument in her response.

may maintain her claim for wrongful discharge against the Defendant.

Plaintiff argues that her discharge violated Arkansas's public policy against discharging an employee for filing a workers' compensation claim. The public policy of a state is found in its constitution and statues. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988). Therefore, in order to determine the public policy of a state, the Court must look to the state's constitution or its statutes. Plaintiff cites Ark. Code. Ann. § 11-9-107 as the statutory basis for her claim that her discharge violated Arkansas public policy. However, § 11-9-107 is a direct annulment of Arkansas law supporting a private cause of action for wrongful discharge in connection with workers' compensation claims. The statute specifically states that it "shall not be construed as establishing an exception to the employment at will doctrine." A claim for wrongful discharge under §11-9-107 must be made to the Arkansas Workers' Compensation Commission not to the courts. *See Brown v. Pepsico, Inc.,* 844 F.Supp. 517 (W.D.Ark. 1994).

Plaintiff argues that this 1993 amendment only applys to injuries that occurred after July 1, 1993, the effective date of the Act. *See Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723 (8th Cir. 1995). She claims that her termination in November 2000 relates not only to her 1999 injury and claims but also to her prior injuries and claims in 1991 and 1993. Plaintiff argues that these prior injuries/claims put her outside the Act and, therefore, her cause of action for termination in violation of Arkansas public policy is not precluded by §11-9-107. This argument is not supported by the evidence. In 1991, Plaintiff applied for and received workers' compensation benefits from the Defendant and then returned to work. In 1993, she again applied for and received workers' compensation benefits from the Defendant and returned to work. There is no evidence that Defendant in any way discriminated against the Plaintiff for

7

filing her 1991 or her 1993 workers' compensation claims. There is no evidence that would indicate that Plaintiff's prior workers' compensation claims had any connection to Plaintiff's termination in November 2000. In fact, the pleading and evidence before the Court clearly show that Plaintiff's 1999 injury was the sole catalyst of her termination. Plaintiff's prior workers' compensation claims do not put her outside the Act's 1993 amendment. She is precluded from bringing a private cause of action for wrongful discharge in connection with her 1999 workers' compensation claim.

Plaintiff also argues that her discharge violated public policy as envisioned by the Arkansas Civil Rights Act, codified as Ark. Code Ann. §16-123-101, *et. seq.* However, Plaintiff has not alleged that her discharge was based upon a disability which would be covered by the Civil Rights Act; rather, she alleges that her discharge was based upon Defendant's allegations of dishonesty and fraud on her part. Such an alleged injury is not the type of injury that is redressed by the Civil Rights Act. Therefore, it is not violative of the public policy expressed in the Act.

Plaintiff has not established that her discharge falls into the public policy exception to Arkansas's employment at will doctrine. Therefore, she may not maintain a wrongful discharge claim against the Defendant based upon that exception.

Because Arkansas does not recognize a wrongful discharge claim based upon an implied covenant and Plaintiff's discharge does not fall into the public policy exception to Arkansas's employment at will doctrine, Defendant is entitled to judgment as a matter of law as to Plaintiff's wrongful discharge claim. Defendant's summary judgment motion should be granted as to this claim.

## II. Plaintiff's Defamation Claim

Plaintiff's defamation claim is based upon allegations that the Defendant maliciously prepared and mailed to her a letter containing false and defamatory matters. She also contends that the Defendant communicated the contents of the letter or delivered copies of the letter to various third parties. In its motion for summary judgment, Defendant argues that Plaintiff can not show that Defendant "published" the defamatory matter or communicated it to someone other than the Plaintiff. Plaintiff has responded stating that the defamatory matter was communicated to other employees of the Defendant, to an investigator hired to film her, to a nurse case manager, to her doctor and to the Arkansas Insurance Commission; therefore, "publication" did occur in this case.

The following elements must be proved to support a claim for defamation, whether it be by the spoken word (slander) or the written word (libel): 1) the defamatory nature of the statement of fact; 2) the statement's identification of or reference to the plaintiff; 3) publication of the statement by the defendant; 4) the defendant's fault in the publication; 5) the statement's falsity; and 6) damages. *Addington v. Wal-Mart Stores, Inc.,* 81 Ark. App. 441, 105 S.W.3d 369 (Ark.App.2003)(*citing Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941, 69 S.W.3d 393 (2002)). A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Id.* Damage to one's reputation is the essence of libel and the protection of that reputation is the fundamental concept of the law of defamation. *Little Rock Newspaper, Inc. v. Dodrill,* 281 Ark. 25, 660 S.W.2d 933 (1983)(*citing Monitor Patriot Co. v. Roy,* 401 U.S. 265, 275, 91 S.Ct. 621, 627, 28 L.Ed.2d 35(1971)). Because defamation is an action for damage to one's reputation and good name there

must be something communicated to a third person which may affect the opinion which that person, or others in the community, have or tend to have, of the plaintiff. *Id.* Thus, publication is an essential element in a claim for defamation. Such "publication" occurs when the defamatory matter is communicated to someone other than the person defamed. *Navorro-Monzo v. Hughes,* 297 Ark. 444, 763 S.W.2d 635 (1989).

### *Defamation based upon the November 10, 2000, termination letter*

In this case, the Defendant sent the Plaintiff a letter terminating her employment. In the letter, Defendant stated that her termination was based upon its belief that Plaintiff had been dishonest about her disability and recovery. Defendant also stated that it had reviewed her case with the Fraud Unit of the Arkansas Department of Insurance and they felt that fraud had been committed. Plaintiff claims that this letter damaged her reputation. However, before the letter can damage her reputation, it must have been sent to someone other than the Plaintiff. The evidence shows that the termination letter was only sent to the Plaintiff and no one else. The essential element of publication is lacking in regards to the termination letter in this case. Therefore, Plaintiff may not maintain a defamation claim based upon the November 10, 2000, termination letter sent to her by the Defendant.

### *Defamation based upon Defendant's communications to third parties*

Plaintiff claims that the contents of the letter were communicated to others which included other employees of the Defendant, an investigator hired to film her, a nurse case manager, her doctor and the Arkansas Insurance Commission. From the evidence before the Court, it appears that Defendant did communicate its belief that Plaintiff had been dishonest concerning her disability and recovery to these individuals, with the exception of her doctor, Dr.

Reddy.[2]  However, the communications to these individuals were protected by a qualified privilege.  A communication is qualifiedly privileged when it is made in good faith upon any subject matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty.  *Wal-Mart Stores, Inc. v. Lee,* 348 Ark. 707, 735, 74 S.W.3d 634, 653 (2002).  All of these individuals had a corresponding interest in whether the Plaintiff was being dishonest concerning her disability and recovery.  Defendant had an interest in Plaintiff's disability and whether she was misrepresenting it, as did the Arkansas Insurance Commission, her doctor, the investigator and nurse case manager assigned to her case and other employees of the Defendant.  This qualified privilege is lost if abused by excessive publication, where a statement is made with malice, or where a statement is made with a lack of grounds for belief in its truthfulness.  *Id.*  Here, Defendant's communications were limited to employees of the company and the insurance commission.  There is no evidence that the statements were made with malice.  And, after viewing the tape, Defendant had every reason to believe that the Plaintiff was not being truthful about her disability and recovery.  There is no evidence that the privilege was lost. Therefore, Defendant's communications to these individuals are protected by a qualified privilege and are not actionable.

It is also noted by the Court that the communications to these individuals were oral.  The statute of limitations on bringing an action for slander (defamation by spoken word) is one year.

---

[2] Defendant did send Dr. Reddy a letter asking him to view a videotape and prepare a report stating whether Plaintiff could return to work.  Dr. Reddy was also asked to state whether he felt that Plaintiff was being truthful about her disability.  No where in the letter did Defendant state its belief that Plaintiff was being dishonest about her disability and recovery.

11

Ark. Code Ann. §16-56-104(3). The communications in this case took place before November 10, 2000. Plaintiff did not file her lawsuit until November 10, 2003, some three years after the communications. Therefore, an action based upon Defendant's oral communications to third parties is outside the statute of limitation, and is not actionable.

Because the essential element of publication is lacking in regards to the termination letter and Defendant's communications to the various third parties are protected by a qualified privilege and/or outside the statute of limitations, Defendant is entitled to judgment as a matter of law as to Plaintiff's defamation claim. Defendant's summary judgment motion should be granted as to this claim.

### III. Plaintiff's claim for the tort of outrage

Plaintiff claims that Defendant's conduct in this case was so outrageous and extreme as to go beyond all bounds of decency. She contends that Defendant's conduct rose to level of outrageous in the following respects: 1) in not believing that she was disabled; 2) in not fully investigating the state of her health; 3) in ignoring her years of faithful service; 4) in terminating her; 5) in accusing her of dishonesty and criminal fraud; 6) in threatening to prosecute her; and 7) in publishing the letter of November 10, 2000.

The Arkansas Supreme Court has formulated four factors necessary to establish the tort of outrage: 1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; 2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; 3) the actions of the defendant were the cause of the plaintiff's distress; and 4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be

12

expected to endure it. *Faulkner v. Arkansas Children's Hosp.,* 347 Ark, 941, 69 S.W.3d 393 (2002). Despite judicial recognition of this tort, the courts have addressed it in a cautious manner and have stated that recognition of it is not intended to open the doors of courts to every slight insult or indignity one must endure in life. *Dillard Dep't Stores, Inc. v. Adams,* 315 Ark. 303, 305-06, 867 S.W.2d 442, 443 (1993)(citations omitted). In particular, the courts have taken a narrow view of claims that arise out of the discharge of an employee. The reason is that an employer must be given considerable latitude in dealing with employees, and at the same time, an employee will frequently feel considerable insult when discharged. *City of Green Forest v. Morse,* 316 Ark. 540, 873 S.W.2d 155 (1994).

The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Hollomon v. Keadle,* 326 Ark. 168, 931 S.W.2d 413 (1996). Clear-cut proof is required to establish the elements in an outrage case. *Croom v. Younts,* 323 Ark. 95, 913 S.W.2d 283 (1996). Merely describing the conduct as outrageous does not make it so. *Renfro v. Adkins,* 323 Ark. 288, 914 S.W.2d 306 (1996).

Plaintiff contends that the Defendant's conduct was outrageous because it should have believed that she was disabled. The fact that the Defendant did not take the Plaintiff's word that she was disabled does not in itself rise to the level of outrageous. An employer is free to doubt whether its employee is truly disabled and, therefore, entitled to workers' compensation benefits.

Plaintiff contends that the Defendant's conduct was outrageous because it did not fully investigate the state of her health. However, Defendant did conduct an investigation into Plaintiff's health/disability. The fact that it may not have been the type of investigation Plaintiff wanted nor the results she desired does not in itself make Defendant's conduct rise to the level

13

of outrageous. An employer is free to conduct an investigation in the manner it sees fit as long as the investigation does not go beyond the bounds of decency. It did not do so in this case.

Plaintiff contends that Defendant's conduct was outrageous because it ignored her years of faithful service. Such conduct on the part of an employer might be considered callous or harsh but it does not rise to the level of outrageous.

Plaintiff contends that Defendant's conduct was outrageous because it terminated her. However, Plaintiff was an at will employee and her employment with the Defendant could be terminated at the will of either party. The fact that Defendant terminated the Plaintiff is not in itself outrageous.

Plaintiff contends that Defendant's conduct was outrageous because it accused her of dishonesty and criminal fraud. However, Defendant had a legitimate bases for its accusations. It was in possession of a videotape showing the Plaintiff taking part in activities which indicated that her disability was not as extensive as she claimed. It was aware that she had made a claim for workers' compensation benefits based upon what it believed was a fake disability. Defendant's accusations were based upon its belief that Plaintiff had been dishonest about her disability and had committed criminal fraud in connection with her workers' compensation claim. These accusations were not wild or unfounded and were no worse than accusations of theft, which the courts have held do not constitute outrage. *See Dillard Dep't Stores v. Adams,* 315 Ark. 303, 867 S.W.2d 442 (1993); *Unicare homes Inc. v. Gribble,* 63 Ark.App. 241, 977 S.W.2d 490 (1998). The fact that Defendant accused the Plaintiff of dishonesty and criminal fraud, after having seen the tape, does not go beyond the bounds of decency.

Plaintiff contends that Defendant's conduct was outrageous because it threatened to

14

prosecute her. In this case, it is apparent that Defendant's threat of prosecution was just that–a threat. It is also apparent that Plaintiff did not take Defendant's threat seriously. Plaintiff continued to pursue her workers' compensation claim despite the threat and she was never prosecuted by the Defendant or the Fraud Unit of the Department of Insurance. There is no question that a threat to prosecute someone is a intimidating technique, but it does not constitute outrage in this case. *See Addington v. Wal-Mart Stores, Inc.,* 81 Ark. App. 441, 105 S.W.3d 369 (Ark.App. 2003).

Finally, Plaintiff contends that Defendant's conduct was outrageous because it published the November 10, 2000, letter. The letter informed Plaintiff that her employment with the Defendant was being terminated. It stated that the reason for her termination was Defendant's belief that she was being dishonest about her recovery and disability. It set forth Defendant's position on the Plaintiff's pending disability claim. It stated that it was believed that she had committed criminal fraud and threatened to prosecute her. Although the contents of the letter were blunt and pointed, they were not outrageous. Therefore, sending the letter to the Plaintiff was not outrageous conduct.

Whether each of the above factors is taken individually or they are considered as a whole, this Court does not believe that the Defendant's conduct rose to the level of that required for outrage. Although Defendant's conduct was aggressive and intimidating, it did not go beyond all bounds of decency.[3] Therefore, the Court finds, as a matter of law, that Defendant's alleged conduct does not rise to the level required by the Arkansas cases involving the tort of

---

[3] In light of the Court's holding that Defendant's conduct did not transcend the bounds of decency, there is no need to address whether the Plaintiff sustained emotional distress so severe that no reasonable person could be expected to endure it.

outrage in the employment context. Defendant's summary judgment motion should be granted as to this claim.

## **CONCLUSION**

For the reasons discussed herein above, the Court finds that the Motion for Summary Judgment filed on behalf of the Defendant, Brookshire Grocery Company, should be and hereby is **granted**. An Order of even date shall be issued.

IT IS SO ORDERED, this 9th day of September, 2005.

/s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge